IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

01 MAR 30 PM 2:40

DISTRICT COURT
N.D. OF ALABAMA

BEVERLY REED CAGLE, )
DAVID CAGLE, )
 )
    Plaintiffs, )
 )
v. ) CASE NO. CV 99-B-1394-NE
 )
HUBBARD & DRAKE GENERAL )
MECHANICAL CONTRACTORS, )
INC., )
 ) **ENTERED**
    Defendant. )
    MAR 3 2001

## MEMORANDUM OPINION

Currently before the court is the Motion for Summary Judgment filed by defendant Hubbard & Drake General Mechanical Contractors, Inc., ("defendant" or "H&D"). The present action arises out of claims by plaintiffs Beverly Reed Cagle ("Ms. Cagle")[1] and David Cagle ("Mr. Cagle")[2] that their former employer, H&D, violated the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*, by terminating their employment. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

### I. FACTUAL SUMMARY

Ms. Cagle contends that she is a qualified individual with a disability because she is engaged in a methadone treatment program to correct her addiction to Lorcet pain pills. (DX 1 at ¶ 5; *see also* DX 2 at 63 & 65.)[3] The court assumes that Mr. Cagle, has based his claim on

---

[1] At the time of the incidents made the basis of this suit, plaintiffs were unmarried. Plaintiffs later married. (PX 1 at ¶ 5.) Ms. Cagle is referred to throughout the proceedings as Beverly Reed and Beverly Cagle. For simplicity throughout this memorandum opinion the court will refer to her by her married name, Ms. Cagle.

[2] The court will refer to Ms. Cagle and Mr. Cagle collectively as "plaintiffs."

[3] Defendant submitted Defendant's Motion for Summary Judgment along with attached exhibits. References to this evidence will be cited as "DX" and the corresponding number. Plaintiffs' exhibits will be cited as "PX" and the corresponding number.

1

protected "association" status under the ADA.[4] In July of 1998, plaintiffs were both employed by defendant. (PX 1 at ¶ 5.) On July 20, 1998, defendant requested that plaintiffs come to work the next morning at 6:00 a.m. to assist on a special "hot tap" project, involving welding into a live nitrogen line. (PX 1 at ¶ 5; DX 2 at 85-86; DX 4 at 15.) Ms. Cagle testified that she and Mr. Cagle told their supervisor that they would be unable to come in to work at 6:00 a.m., because she "had to go to the methadone clinic." (PX 1 at ¶ 5.)[5] Defendant contends it terminated plaintiffs on July 21, 1998, because throughout the day, the supervisors on the hot tap project could not find plaintiffs, that they were late getting back from breaks and lunch, and that plaintiffs' absence was holding up the project. (DX 4 at 23, 29, 41, 53). Plaintiffs claim they were terminated because of Ms. Cagle's condition. (DX 2 at 62; DX 1 at ¶¶ 7 & 8.)

On October 5, 1998, Beverly Cagle mailed a handwritten letter to the EEOC district office in Birmingham, Alabama, which she claims constitutes a charge of discrimination. (PX 1 Ex. B; DX 2 at 121-122.) The relevant portion of the letter states:

> David [and] myself told [Bittinger] we couldn't be there at 6:00 but could be there around 6:15-6:30, He looked puzzled but said "that was fine, get here A.S.A.P." I then (after discussing it with David) told [Bittinger] why. I had to go to the methadone clinic [and] they didn't open until 5:30 [and] it takes approx. 45 min. to get to Decatur from Muscle Shoals (where we live and the clinic is.) ...We got everything ready for the hot-tap man, he got there approx. 7:00 –7:30 maybe even 8:00 a.m. We took lunch at 12:20 (reg. time 12:00). We went back to work at 12:45, we're suppose [sic] to have 30 min., we took 25. We went to break at 3:00 – 3:15. When we went to break, we took our tools back to our gang box, and the truck our foreman left us ran out of fuel, so I had B.A. (the toolroom girl) call "Ken" (our foreman) to bring some fuel so we could go back to work. Ken came

---

[4] The association provision of 29 C.F.R. § 1630.8 states, "[i]t is unlawful for a covered entity to . . . discriminate against a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a family, business, social, or other relationship or association." Plaintiffs Brief in Opposition to Defendant's Motion for Summary Judgment (Pls.' Brief") states that, "David Cagle has an 'association' with plaintiff Beverly Cagle so as to give plaintiff David Cagle standing to bring this action." (Pls.' Brief at 6.) Plaintiffs' Complaint states that "defendant terminated the employment of plaintiffs Beverly Reed Cagle and her husband David Cagle, because of plaintiffs impairment." (DX 1 at ¶ 7.)
[5] David Bittenger "Bittenger", the job site superintendent, states that only Mr. Cagle told him they would not be in at six because they had an appointment at a clinic in the Florence-Muscle Shoals area and that Mr. Cagle did not mention the word methadone. (DX 4 at 15-16.) However, for purposes of defendant's Motion for Summary Judgment, all reasonable inferences will be drawn in favor of the plaintiffs. Therefore, the court will assume plaintiffs told their supervisor that they would be unable to come in to work at 6:00 a.m. because they "had to go to the methadone clinic.

2

over there [and] told us "Get your s\*\*t, I'm taking yall to the gate!!" We asked, why we were being fired [and] he said "Yall came in at 6:30 and didn't start working until 7:00." We told him "No Ken, we got here at 6:15 starting [sic] working at 6:30 and I was at the tool room at 7:00." He said, "Well yall didn't go (sic) back from lunch till 12:45." We said, "we didn't take lunch till 12:20." He said, "O.K. it's 3:25 now break was over at 3:15." We said "Ken, the truck is out of fuel you left us." He said "Well all I know is [Bittinger] and Scotty (project manager) wants yall off the job." We signed up for our unemployment [and] got it. Thank you.

(PX 1 Ex. B at 2-5.) The letter is in Ms. Cagle's handwriting, is not sworn, and contains no writing or signature from Mr. Cagle. (PX 1 Ex. B at 2-5.) This is the only charge of discrimination filed by the plaintiffs. Mr. Cagle never filed a charge of discrimination with the EEOC. (DX 3 at 44-45.)

EEOC investigator, Allen Gosa ("Gosa"), mailed a letter dated December 18, 1998, to Ms. Cagle stating that the incident Ms. Cagle described in her letter did not describe a situation covered by the laws administered by the EEOC. (DX 2 at Ex. 9.) Gosa explained: "Your correspondence indicated that the situation you described is not covered by the laws we administer. Therefore, we have no authority to handle the matter." (DX 2 at Ex. 9.)[6] Ms. Cagle acknowledged in her deposition that she received the letter. (DX 2 at 124.)

On February 12, 1999, almost one month after the expiration of the 180 day time limitation following plaintiffs termination, plaintiffs' attorney sent a letter to investigator Gosa at the EEOC. (DX 2 at Ex. 10 at 1.) Plaintiffs' attorney asked that Ms. Cagle's handwritten letter be considered a charge of discrimination, as it "clearly" alleged violations of the ADA due to Ms. Cagle's methadone treatment. (DX 2 at EX. 10 at 1.) In the letter, plaintiffs' attorney also requested a right to sue letter. (DX 2 at Ex. 10 at 2.) On March 19, 1999, the EEOC issued a Notice of Charge of Discrimination to defendant. (DX 2 at Ex. 11.) On April 5, 1999, the EEOC issued a Notice of Right to Sue on April 5, 1999, to Ms. Cagle. (DX 2 at Ex. 12.)

In February or March of 1999, defendant received the Notice of Charge of Discrimination from the EEOC, which stated that a copy of the charge was attached. (DX 2 at

---

[6] Attached to DX 3, is Exhibit 14, a letter identical to the one addressed to Ms. Cagle, but addressed to Mr. Cagle. However, this letter is not signed, and the date of plaintiffs' inquiry is handwritten on the letter.

Ex. 11; DX 7 at 1.) However, defendant contends that a copy of the charge was not enclosed. (DX 7 at 2.) Jocelyn Hubbard, ("Hubbard") Office Manager for defendant, states that after receiving the letter she placed a telephone call to "Allen Gosa at the EEOC, to ask what this [charge] was all about." (DX 7 at 2.) Hubbard stated that she asked Gosa what disability the plaintiffs alleged. (DX 7 at 2.) According to Hubbard, Gosa told her he could not go into the details of the charge, but that the charge was without merit. (DX 7 at 2.) Shortly after this conversation, defendant received a copy of plaintiffs' Notice of Right to Sue. (DX 7 at 2.) Defendant contends that it had no opportunity to respond to these claims at the EEOC level and had no opportunity to participate in conciliation efforts at the EEOC level. (DX 7 at 2.)

On May 11, 1999, plaintiffs filed a complaint in the Circuit Court of Morgan County, Alabama, alleging violations of the ADA. (DX 1.) Defendant properly effected removal of the case to this court, and now moves for summary judgment on plaintiffs' claims.[7]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be

---

[7] Defendant filed its Notice of Removal, on May 28, 1999.

believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

**A.     Plaintiffs' EEOC Letter did not Constitute a Charge by Either Plaintiff**

Defendant asserts that Ms. Cagle's letter cannot be construed as a charge of discrimination. (Defendant's Brief in Support of Summary Judgment ("Def.'s Brief") at 8.) The starting point for ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation. *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985). EEOC regulations provide that charges should contain:

> (1)   the full name, address, and telephone number of the person making the charge;
> (2)   the full name and address of the person against whom the charge is made;
> (3)   a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices;
> (4)   if known, the approximate number of employees of the respondent employer;
> (5)   a statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency.

29 C.F.R. § 1601.12(a). Notwithstanding the foregoing, "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

The issue before the court is whether Ms. Cagle's letter constitutes an EEOC charge pursuant to the aforementioned rules. In *Malone v. K-Mart Corp.*, 51 F. Supp. 2d 1287, 1299 (M.D. Ala. 1999), the court held that a plaintiff's EEOC letter constituted an EEOC charge "because the Plaintiff's EEOC letter: (1) satisfie[d] the requirements of 29 C.F.R. § 1601.12(b); (2) convey[ed] Plaintiff's present intent to file an EEOC charge; and (3) was considered an EEOC charge by the EEOC." In *Malone,* the plaintiff enclosed in her letter to the EEOC a list of the discriminatory acts she had suffered, such as being subjected to racist jokes and comments. *See id.* at 1294 & 1297. In *Moore v. Alabama State University,* 945 F. Supp. 235, 239-40 (M.D. Ala. 1996), the court found a plaintiff's letter sufficient to constitute an EEOC charge. The

*Moore* court addressed two factors in reaching its conclusion. First, the court noted that plaintiff's letter stated, "I hereby file a complaint against Alabama State University, [address and phone number]. The claim is for sexual discrimination against me . . . ." *Moore,* 945 F. Supp. at 239. Second, the court noted that the EEOC addressed plaintiff's complaint as a charge, stating in its letter to the plaintiff that she had "'filed her charge on March 29, 1994.'" *Id.* at 239. In *Brook v. City of Montgomery, Alabama,* 916 F. Supp. 1193, 1202 (M.D. Ala. 1996), the court held that the plaintiff's letter to the EEOC constituted an EEOC charge. The *Brook* court also addressed two factors in reaching its conclusion. First, the court noted that in his letter plaintiff discussed "two promotions he was allegedly denied, as well as the retaliatory acts allegedly taken against him for objecting to what he believed was an age-based decision not to promote him." *Id.* at 1202. Second, the court noted that "the EEOC assigned the letter a charge number and, thus, treated the letter as a charge." *Id.*

The letter Ms. Cagle wrote to the EEOC meets neither of the two factors addressed by other district courts in this Circuit. First, no where in her letter does Ms. Cagle state that she believed she was discriminated against or terminated because of her alleged disability. Second, the EEOC did not treat her letter as an EEOC charge. (*See* DX 2 at Ex. 9 ("Your correspondence indicated that the situation you described is not covered by the laws we administer. Therefore, we have no authority to handle the matter.").) Therefore, Ms. Cagle's letter dated October 4, 1998, does not constitute an EEOC charge.

Plaintiffs assert that Ms. Cagle was instructed by the EEOC to file a letter such as the one she in fact filed, and therefore, she should not be prejudiced by any incorrect information given to her by the EEOC. (Pls.'s Brief at unnumbered 7; PX 1 at ¶ 10.) Ms. Cagle stated in her affidavit, "I contacted the Equal Employment Opportunity Commission, and was told to send a letter asserting my charge, which I did, a copy of which is attached hereto . . . ." (PX 1 at ¶ 10.) Plaintiffs fail to identify any statements or make any allegations that the EEOC mislead them into filing a letter that failed to state a valid EEOC charge or mislead them into failing to verify their complaint. Thus, the court can find no evidence that the EEOC mislead plaintiffs or

prejudiced plaintiffs by providing incorrect information. Based on the lack of evidence, the court finds that plaintiffs have presented no reason to justify excusing their failure to comply with the requirements of 29 C.F.R. § 1601.12(a) or (b).

Further, regulations require that "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. §1601.9. The term verified means "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a). Technical defects, including failure to verify the charge, may be cured by amendment, and the amendment will relate back to the date of the original charge. 29 C.F.R. § 1601.12(b).

In the present case, the last day for plaintiffs to file a valid charge of discrimination was January 17, 1999, 180 days after plaintiffs were terminated. 42 U.S.C. § 2000e-5(e)(1). Within this 180-day filing period, Ms. Cagle submitted to the EEOC a handwritten letter which was not verified and did not constitute a valid EEOC charge. (DX 2 at Ex. 8.)[8] As noted above, EEOC charges must be verified. 29 C.F.R. § 1601.9 (A charge shall be verified); 42 U.S.C. § 2000e-5(b) (A charge must contain an oath or affirmation to be valid.). Ms. Cagle has failed to comply with this requirement. *See Vason v. City of Montgomery*, 240 F.3d 905, 907 (11th Cir. 2001) (affirming district court's grant of summary judgment because plaintiff's charge was not verified even though plaintiff had received a right to sue letter).

After receiving the EEOC's correspondence of December 18, 1998, plaintiffs failed to amend their letter before the expiration of the 180 day limitations period. Their attorney submitted a letter to the EEOC in February of 1999, purportedly clarifying plaintiffs' claim of disability discrimination based on methadone treatment for drug addiction; however, this letter

---

[8] Ms. Cagle's letter was not sworn to or affirmed before a notary republic, a designated representative of the Commission, or other person duly authorized by law to administer oaths. Neither was Ms. Cagle's letter an unsworn declaration in writing under penalty of perjury. *See* 29 C.F.R. § 1601.3(a). An unsworn declaration in writing under penalty of perjury must be in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746.

was filed outside of the 180 day limitations period. (DX 2 at Ex. 10; *see also* 42 U.S.C. § 2000e-5(e).) Ms. Cagle's handwritten letter is the only document presented to the EEOC within the 180-day filing period, and it was not a valid charge.

Even assuming Ms. Cagle's original letter was substantively sufficient to constitute a valid charge of discrimination, either standing alone or in conjunction with her attorney's letter, no submission to the EEOC in this case has ever been verified, sworn, or affirmed by either Ms. Cagle or Mr. Cagle.[9] Although failure to verify the charge may be cured by amendment that will relate back to the original charge date, this option is only available while a valid charge is still pending with the EEOC. *See Shempert v. Harwick Chemical Corp.*, 151 F.3d 793, 796-797 (8th Cir. 1998) (If EEOC Intake Questionnaire is not verified, it is not a charge, and therefore, a subsequently amended verified charge, will not "relate back" to the date of filing the Intake Questionnaire); *see also Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994) (Charges may be verified and relate back only so long as the charge is a viable one in the EEOC's files, but where a right to sue letter has issued, a suit instituted, and the EEOC has closed its file, there is no longer a charge pending before the EEOC capable of being amended.). In *Balazs*, the Fourth Circuit noted:

> Plaintiff and the EEOC agree that the purpose of verification is to protect the employer from having to respond to frivolous charges, but that protection is lost once the right to sue letter issues and the employer is served with a lawsuit. At that point the employer's only choice is to defend the suit even if it is, as appears to be the case here, based at least in part on a charge not covered by Title VII. Carried to its logical conclusion, under the EEOC's interpretation of its regulation it would never be too late to verify a charge, and if this case had gone to trial and had resulted in a judgment from which appeal was taken, plaintiff's verification of his charge would have been timely if made while the case was pending in this court.
>   Such an absurd result was surely not what Congress had in mind when it enacted the statute nor what the EEOC had in mind when it adopted the regulation allowing a verification to amendment to relate back to the time the charge was filed.
>   Thus we conclude that a reasonable construction of the EEOC's regulation would simply allow charges to be verified and to relate back only so long as the charge is a viable one in the EEOC's files, but that where, as here, a right to sue letter has issued, a suit has been instituted and the EEOC has closed its file, there

---

[9] Mr. Cagle has never submitted any document to the EEOC in his handwriting, and has never signed any document sent to the EEOC.

>is no longer a charge pending before the EEOC which is capable of being amended.

*Balazs,* 32 F.3d at 157. Recently, the Eleventh Circuit affirmed a case from the Middle District of Alabama that granted summary judgment in a Title VII action where the plaintiff failed to verify a charge of discrimination prior to the EEOC's issuance of a right to sue letter. *See Vason v. City of Montgomery*, 86 F. Supp. 2d 1130, 1132-33 (M.D. Ala. 2000) *aff'd* 240 F.3d 905 (11th Cir. 2001). Noting that it appeared to be a question of first impression in the Eleventh Circuit, and relying upon cases from other jurisdictions, the court held that verification during the pendency of the charge at the EEOC is an absolute prerequisite to maintaining a civil action. *See id.* at 1132-33 (collecting cases).

Under the plain language of the governing statute and regulations, plaintiffs were required to submit verified charges of discrimination to the EEOC. Because plaintiffs have failed to verify their EEOC complaint before a right to sue letter was issued, plaintiffs' claim is barred.

**B.     Plaintiffs Cannot Establish a Prima Facie Case Under the ADA**

Even assuming plaintiffs had filed a valid verified charge with the EEOC, their claims would still be barred because Ms. Cagle cannot establish a prima facie case under the ADA. The ADA prohibits "discriminat[ion] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The familiar burden-shifting analysis of Title VII employment discrimination actions is equally applicable to ADA claims." *Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220, 1226 (11th Cir. 1999). Under the analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981), the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If the plaintiff successfully establishes a prima

facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802.

If the defendant succeeds in carrying this burden, then the plaintiff must prove that the defendant's articulated reasons are a mere pretext for unlawful motives. *Burdine*, 450 U.S. at 253. A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997); *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). At all times, the plaintiff bears the burden of persuasion on the ultimate question of whether defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must prove the following elements: (1) that she has a disability; (2) that, with or without reasonable accommodations, she could perform the essential functions of her job; and (3) that she was discriminated against because of her disability. *Terrell v. U.S. Air,* 132 F.3d 621, 624 (11th Cir. 1998). Under the ADA, a person is considered disabled if she (1) suffers from a mental or physical impairment that substantially limits one or more of her major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). In this case, Ms. Cagle claims she is disabled for purposes of the ADA because she is in recovery for an underlying drug addiction, and Mr. Cagle claims he was discriminated against because of his association with Ms. Cagle.

### 1) Whether Ms. Cagle has a Disability

The mere presence of an impairment is not, by itself, sufficient to constitute a disability under the ADA. See *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 (11th Cir.1998). Rather, a disability exists only where the impairment substantially limits one or more major life activities. See *Sutton v. United Airlines,* 527 U.S. 471, 472 (1999). The Supreme Court has articulated a three-step inquiry for determining whether an impairment substantially limits a major life activity so as to constitute a disability under the ADA. See *Bragdon v. Abbott*, 524

U.S. 624 (1998). First, the court must ascertain whether the plaintiff suffers from a physical or mental "impairment." *See id.* at 631. Next, the court must identify whether the life activity purportedly impacted by that impairment is a "major life activity." *See id.* at 637. Finally, the court must determine whether the claimed impairment "substantially limits" that major life activity. *See id.* at 639. Ms. Cagle has not shown that her impairment "substantially limits" a major life activity. Therefore, the court will not address whether Ms. Cagle's condition constitutes an impairment within the ADA or whether Ms. Cagle's addiction impacts a major life activity.

     A court's inquiry into whether an individual is substantially limited in a major life activity is an individualized one, taking into consideration the effect of the impairment on the individual's life. *See Sutton,* 527 U.S. at 483. Because the ADA does not define "substantially limits," the court must look to the EEOC regulations for guidance. According to those regulations, a physical or mental impairment is "substantially limiting" if the individual is either "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). In further discussing the "substantially limits" definition, the Supreme Court has noted that the term "substantially" suggests a limitation that is "considerable" or "specified to a large degree." *See Sutton*, 527 U.S. at 490-91 (citing Webster's Third New International Dictionary 2280 (1976); 17 Oxford English Dictionary 66-67 (2d ed.1989)). A court must also take into account measures that correct or mitigate the impairment, such as medication or physical aids, when determining whether a plaintiff is substantially limited by her impairment; however, the plaintiff can still be "disabled" under the ADA, if, despite treatment or corrective devices, she remains substantially limited in a major life activity. *Sutton,* 527 U.S. at 482.

An impairment is not "substantially limiting" if it is corrected through mitigating measures. *Sutton,* 527 U.S. at 482-83; *Murphy v. United Parcel Service,* 527 U.S. 516, 521 (1999). Ms. Cagle's drug addiction is not substantially limiting when she is undergoing the methadone treatment.[10] Ms. Cagle testified that her daily methadone treatments render her normal, stable, and completely able to function. (DX 2 at 67, 72-73.) Ms. Cagle also testified that her addiction never affected any job she held, rendered her unable to work, required any accommodation, or affected her job performance. (DX 2 at 83.) Consequently, Ms. Cagle is not substantially limited with respect to any major life activity. *See Blackston v. Warner-Lambert Co.,* 2000 WL 122109, at *4 (N.D. Ala. 2000) (Plaintiff's testimony, "'as long as I'm on my medication, I'm okay,' belies any argument that he was substantially limited by his ADD." Plaintiff also testified that he was not limited in performing his job when he was properly medicated and provided with certain accommodations.).

  2) <u>Whether Plaintiff has a Record of a Disability</u>

Even if Ms. Cagle does not have an actual disability, she will be considered disabled under the ADA if she can demonstrate that she has a record of disability. *See* 42 U.S.C. § 12102(2)(B). An individual with a record of disability is a person who has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). This part of the disability definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. *See id.* One purpose of this provision is to prevent discrimination against individuals because of a history of disability. *See id.* The other purpose is to ensure that individuals are not discriminated against because they have been misclassified as being disabled, such as a person who is erroneously classified as having a learning disability. *See id.* In order to prevail on this prong of the ADA, a plaintiff must show that at some point in the past, the employer relied upon a record which either classified or misclassified that

---

[10] Plaintiffs' complaint states that "[Ms. Cagle] is fully capable of safely performing the necessary and essential functions of her job while taking the methadone treatment." (DX 1 at ¶ 5.)

individual as having a physical or mental impairment that substantially limits a major life activity. *Phillips v. Wal-Mart Stores, Inc.*, 78 F. Supp. 2d 1274, 1286-87 (S.D. Ala. 1999).

On July 20, 1998, plaintiffs were asked to report to work at 6:00 a.m. (PX 1 at ¶ 5.) Ms. Cagle stated in her affidavit that she and Mr. Cagle told Bittenger that they "would not be able to come in as early as Mr. Bittenger wanted due to the fact that [Ms. Cagle] had to go to the Methadone Clinic to receive [her] treatment . . . ." (PX 1 at ¶ 5.) While this may show that defendant was aware that plaintiff suffered from an addiction, plaintiff has not produced any evidence that defendant had a record of an impairment that substantially limited a major life activity. *See Schwertfager v. City of Boynton Beach*, 42 F. Supp. 2d 1347, 1360 (S.D. Fla. 1999) ("[The] affidavit states that nothing in [plaintiff's] personnel file ever indicated that she was substantially limited by a disability, either in her ability to perform her job or in any other respect."); *see also Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 192 (5th Cir. 1996) (Defendant's knowledge of plaintiff's cancer was insufficient to establish a "record of" definition of disability where nothing in plaintiff's personnel file indicated plaintiff was substantially limited by a physical or mental impairment in her ability to perform her job.).

Ms. Cagle has presented no evidence that defendant had any record of her addiction, let alone that her addiction substantially limited a major life activity. *See Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999) ("the record-of-impairment standard is satisfied only if she actually suffered a physical impairment that substantially limited one or more of her major life activities."); *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1121 (5th Cir. 1998) (noting that prior back surgery and leave of absence tend to prove record of impairment, but do not show that such impairment substantially limits a major life activity). A reasonable jury could not conclude from plaintiffs' evidence that Ms. Cagle has a record of disability.

### 3) Whether Plaintiff is Regarded as Having a Disability

A plaintiff may also establish a prima facie case under the ADA if she can establish that she was "regarded" by her as employer as having a disability. There are two ways in which an

individual may invoke this statutory definition: (1) an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual nonlimiting impairment substantially limits one or more major life activities. *Sutton,* 527 U.S. at 489. "In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.*

With respect to "perceived impairments," the Eleventh Circuit has observed: "As with real impairments, courts have held that a perceived impairment must be substantially limiting and significant. In this context, then, a significant impairment is one that is viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks." *Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907, 913 (11th Cir. 1996) (citations omitted). There is no evidence before the court that plaintiff was perceived as being "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes . . . ." *Murphy v. U.S. Parcel Service, Inc.,* 527 U.S. 516, 523 (1999).

Ms. Cagle has presented no evidence that defendant regarded her as disabled. The evidence before the court reflects that Ms. Cagle was able to perform her duties as a welder, and was not perceived by her superiors to be disabled. Defendant employed Ms. Cagle as a welder without restriction, and did not treat her as if she was limited in her ability to perform her job. A reasonable jury could not conclude from this evidence that Ms. Cagle's supervisors viewed her as incapable of, or substantially limited in performing her job as a welder.

Thus, even if plaintiffs had filed a valid charge of discrimination, Ms. Cagle has failed to establish a prima facie case under the ADA, therefore, defendant is entitled to judgment as a matter of law.

C.   **Mr. Cagle's Association Claim**

Mr. Cagle makes no claim in this case that he has a disability under the ADA. Mr. Cagle claims that defendant discriminated against him because of his association with Ms. Cagle. (DX

1 at ¶ 7.) The "association" provision of the ADA protects discrimination due to a family, business, social, or other relationship. 29 C.F.R. §1630.8. Because plaintiffs allege that they were dating during the relevant period, the court assumes without deciding that their relationship qualifies under this regulation. In order to establish a prima facie case under the "association discrimination" theory, Mr. Cagle must establish the following elements: (1) he was subjected to an adverse employment action, (2) he was qualified for the job at the time, (3) he was known by defendant at the time to have an association with a person with a disability, and (4) the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of that person was a determining factor in defendant's decision. *See Hilburn v. Murata Electronics North America,* 181 F.3d 1220, 1230-31 (11th Cir. 1999) (citing *Hartog v. Wasatch Academy,* 129 F.3d 1076, 1085 (10th Cir. 1997)).

Defendant argues that Mr. Cagle's association claim fails because Ms. Cagle did not have a disability within the meaning of the ADA at the time Mr. Cagle was terminated. (Def.'s Brief at 17.) The "association" provision of the ADA requires an association with an individual with a known disability. 42 U.S.C. § 12112(b)(4). Under the ADA, a person is considered disabled if she (1) suffers from a mental or physical impairment that substantially limits one or more of her major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). Because the court has determined that Ms. Cagle did not have a disability as defined by the ADA at the time plaintiffs were terminated, Mr. Cagle cannot establish a prima facie case of association discrimination. Therefore, defendant is entitled to judgment as a matter of law on this claim.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that there is no genuine issue of material fact and that defendant's Motion for Summary Judgment is due to be granted. An order in accordance with this Memorandum Opinion will be entered contemporaneously with this Opinion.

**DONE** this 30th day of March, 2001.

                                                      *Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge